# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:11-cv-190-FDW-DSC

| | | |
|---|---|---|
| **ROY LANE CAMPBELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **WAYNE GAITHER, IAN GAITHER, and Does 1-49,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER is before the Court on *pro se* Plaintiff's Motion for Protective Order (Doc. No. 6) and Motion for Temporary Restraining Order ("TRO") (Doc. No. 7). Having reviewed Plaintiff's Motions, the Court concludes that the relief sought in the Motion for Protective Order is actually the same injunctive relief sought in the Motion for TRO. The Court therefore DENIES Plaintiff's Motion for Protective Order as moot. The remainder of this Order will address Plaintiff's Motion for TRO. For the reasons set forth, the Court concludes Plaintiff lacks standing to prosecute Plaintiff's claims relating to sales and income tax evasion and unemployment insurance fraud. Those claims are accordingly DISMISSED. As to Plaintiff's remaining claims for racial discrimination and breach of the covenant of quiet enjoyment, the Court concludes Plaintiff has not made the showing necessary for a TRO to issue. Plaintiff's Motion for TRO is DENIED.

## I. BACKGROUND

Plaintiff filed suit on April 18, 2011, alleging several causes of action against named Defendants, Wayne and Ian Gaither, including conspiracy to evade sales and income tax payments (Am. Compl. ¶¶ 6, 9) and to commit unemployment insurance fraud (Am. Compl. ¶ 7). Plaintiff further alleges that he and Defendant Wayne Gaither are co-tenants of a "demised property" located

at 5924 North Tryon Street, Charlotte, North Carolina ("the property"), that Defendants have breached the implied covenant of quiet enjoyment (Am. Compl. ¶ 8, 11) and that Defendant Wayne Gaither has "interfered, has attempted to interfere, [and] has attempted to intimidate Plaintiff of his rights as a co tenant [sic]" of the property. (Am. Compl. ¶ 10). Plaintiff alleges, on information and belief, "that such action(s) by Defendant(s) are racially motivated and violates Plaintiff rights as provided for by the Constitution Of The United States of America [sic]." (Id.) Plaintiff describes himself as Caucasian and alleges Defendants are African-American. (Am. Compl. ¶¶1-3). Plaintiff seeks to enjoin Defendants from interfering with Plaintiff's access to the property, from disturbing, pilfering, or damaging "any assets Plaintiff has a financial or personal interest [sic]," and apparently from enforcing a non-judicial eviction notice Plaintiff alleges Defendants mailed to him. (Doc. No. 7 at 2; Doc. No. 7 Exh. A). Plaintiff amended his Complaint as a matter of course on May 13, 2011, to clarify the terms of the co-tenancy agreement, but has not added any new claims for relief or parties.

Plaintiff does not provide a short or plain statement of the grounds for subject matter jurisdiction, as required by the Federal Rules of Evidence. Rule 8(a)(1). Instead, Plaintiff alleges that the amount in controversy exceeds $75,000, but further alleges that Plaintiff and the named Defendants are all citizens of North Carolina. (Am. Compl. at 1, ¶¶ 1-3). The only other discernible basis for jurisdiction appears to be Plaintiff's conclusory assertion that Defendants have interfered with his property rights due to racial animus, in violation of the federal Constitution. (Am. Compl. ¶ 10).

## II. DISCUSSION

### A. Plaintiff Lacks Standing as to Tax and Insurance Fraud Claims

Subject-matter jurisdiction involves the Court's power to hear a case and thus the Court has

an independent obligation to determine whether it has jurisdiction to consider the merits of a case "even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citation omitted). Furthermore, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon [Plaintiffs]." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Specifically, Plaintiff has the burden of establishing jurisdiction either through diversity of the citizenship of the parties under 28 U.S.C. § 1332 or by raising a federal question pursuant to 28 U.S.C. § 1331.

It is well-established that in addition to the normal jurisdictional requirements, Plaintiff must also have standing to file suit. See e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). Article III of the Constitution restricts the federal courts to hear only actual cases and controversies. "Among the several doctrines that have grown up to elaborate [this] requirement, the one that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important." Friends of Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 319 (4th Cir. 2002) (citations omitted). Standing requires that a plaintiff have "a sufficient personal stake in the outcome of [the] dispute to render judicial resolution of it appropriate in a society that takes seriously both 'the idea of separation of powers' and, more fundamentally, the system of democratic self-government that such separation serves." Id. (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)). As with other jurisdictional requirements, Plaintiff bears the burden of establishing he has standing to bring suit. Id. (citations omitted).

In order to demonstrate standing, Plaintiff must satisfy the "irreducible constitutional minimum" that (1) he has suffered an injury in fact, that is, "an invasion of a legally protected

interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is fairly traceable to the defendant's actions; and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations omitted); see also Long Term Care Partners, LLC v. United States, 516 F.3d 225, 230-31 (4th Cir. 2008). In addition to this constitutional threshold that Plaintiff must satisfy, there also exists certain judicially-imposed prudential limitations to standing which includes limits on the ability of a plaintiff to assert legal rights resulting only from a party's status as a citizen or taxpayer. See Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 218-228 (1974).

Here, Plaintiff's claims that Defendants have failed to pay sales tax to the "North Carolina Department of Revenue" on sales of furniture made at Defendants' retail furniture store (Am. Compl. ¶ 6), have failed to declare rental payments on the property as income to either the Internal Revenue Service or the North Carolina Department of Revenue (Am. Compl. ¶9), and have committed fraud against the state Employment Security Commission (Am. Compl. ¶ 7), all suffer from a number of jurisdictional and standing defects.

First, it is not readily apparent how fraud against the North Carolina Department of Revenue or the North Carolina Employment Security Commission implicate a federal question.[1] Although it is well-established that federal courts enjoy federal question jurisdiction over some state law claims, the scope of jurisdiction has been limited to those claims that "'really and substantially involv[e] a dispute or controversy respecting the validity, construction, or effect of [federal] law.'" Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) (quoting Shulthis

---

[1] Because the parties are non-diverse (Am. Compl. ¶¶ 1-3), the Court will only have subject matter jurisdiction to consider Plaintiff's claims if they raise a federal question pursuant to 28 U.S.C. § 1331.

v. McDougal, 225 U.S. 561, 569 (1912)).  Plaintiff has not asserted any claims that implicate the validity, construction, or effect of federal law relating to these claims.

Second, this Court is simply unaware of any statute or law, either in the United States Code or the North Carolina General Statutes, which provides a private right of action for plaintiffs to sue a private individual for failure to pay or declare taxes to the state or federal governments.  Nor is this Court aware of any law which provides a private right of action to Plaintiff for the fraudulent unemployment benefits payments Defendant Ian Gaither is allegedly receiving from the state Employment Security Commission.  Instead, the Court will cleave to the long-standing reluctance of the federal courts to infer a private right of action in the absence of any evidence of legislative intent to create one.  See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979).  Plaintiff has presented no such evidence or allegation.

Finally, even assuming a private action did exist as to these claims, and that some nexus existed between federal funds and the state Employment Security Commission or Department of Revenue sufficient to create a federal question as to the failure to pay state taxes–which Plaintiff has not alleged–Plaintiff has not suffered a concrete or particularized injury from Defendants' alleged conduct.  Lujan, 504 U.S. at 560.  Instead, the alleged unemployment insurance fraud victimizes the state of North Carolina and its citizens as a whole, which is insufficient to provide standing. Schlesinger, 418 U.S. at 220 ("standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share").  Likewise, the failure to pay sales or income taxes injures the state and federal governments as a whole, and Plaintiff's status as a citizen or taxpayer that (presumably) does pay taxes would not be sufficient to provide standing for those claims.  Id.; see also Flast v. Cohen, 392 U.S. 83, 102 (describing the required nexus between the plaintiff's

status as a taxpayer and the alleged injury necessary to provide standing).

Accordingly, Plaintiff's claims alleging a failure to pay or report sales and income taxes and alleging fraud against the North Carolina Employment Security Commission must be DISMISSED for lack of subject matter jurisdiction and lack of standing. The only claims that remain are Plaintiff's claims for racial discrimination and breach of the implied covenant of quiet enjoyment.

## B. Motion for TRO

A TRO, like a preliminary injunction, is "an extraordinary remedy" that affords, on a temporary and preliminary basis, the same relief which can be granted by a permanent injunction to be issued after trial. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009), vacated, 130 S. Ct. 2371, adhered to in relevant part, 607 F.3d 355 (4th Cir. 2010). In order for a TRO to issue, Plaintiff must meet four elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in his favor; and (4) that an injunction is in the public interest. Id. (quoting Winter v. Natural Resources Def. Council, 555 U.S. 7, 374 (2008)).

Plaintiff has failed to demonstrate that he is likely to succeed on the merits on his claim of racial discrimination in violation of the federal Constitution. (Am. Compl. ¶ 10). It is not clear what constitutional provision Plaintiff sues under, but the only available avenues for relief appear to be either the Fourteenth Amendment or 42 U.S.C. § 1985. As an initial matter, Plaintiff's Complaint contains no allegations of state action and instead alleges only that private individuals have interfered with Plaintiff's property rights based on a conclusory statement of racial animus. Because the Fourteenth Amendment is directed at the states, actions brought pursuant to the Fourteenth Amendment must allege conduct that may be fairly characterized as "state conduct" in order to be actionable. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). Thus, without an

6

allegation of state action, Plaintiff's claim of racial discrimination has failed to state a claim for relief under the Fourteenth Amendment.

To the extent Plaintiff alleges a conspiracy among the named Defendants to deprive civil rights in violation of 42 U.S.C. § 1985(3), Plaintiff has also failed to indicate his likelihood of success on the merits. Although § 1985(3) does apply to wholly private individuals, the statute only applies to a narrow range of conduct. Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971). In order to prevail on a § 1985(3) claim, Plaintiff must prove, *inter alia*, "(1) that some racial, or perhaps otherwise class-based invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993) (internal quotations and alterations omitted) (quoting Griffin, 403 U.S. at 102; Carpenters v. Scott, 463 U.S. 825, 833 (1983)). Specifically, courts have insisted that actionable conduct under § 1985(3) must be "independently unlawful." Harrison v. KVAT Food Mgmt., Inc., 766 F.2d 155, 162 (4th Cir. 1985). Ultimately a § 1985(3) claim turns on the presence or absence of "racial . . . invidiously discriminatory animus," which the Supreme Court has read to mean racial animus directed at a protected group by reason of its race. See Bray, 506 U.S. at 270.

Assuming for the sake of argument that Plaintiff's status as a Caucasian puts him within a protected class for the purposes of § 1985(3), see Stevens v. Tillman, 568 F. Supp. 289, 293 (N.D. Ill. 1983), Plaintiff's Complaint only makes a conclusory statement that Defendants' alleged interference with his rights in the property is racially motivated. (Am. Compl. ¶ 7). There are no factual allegations–aside from Plaintiff's allegation that he is white and Defendants are black–that support a claim of "invidiously discriminatory animus." The Court cannot infer that Plaintiff will prevail on a § 1985(3) on such paltry allegations.

Furthermore, Plaintiff admits that he is co-tenant of the property with Defendant Wayne Gaither and thus the statutory limit on a § 1985(3) claim, requiring trespass in pertinent part, <u>Griffin</u>, 403 U.S. at 102-03, has not been satisfied. While the circumstances surrounding the alleged non-judicial eviction are not clear (Doc. No. 7 Exh. A), there is no allegation that the conduct is "independently unlawful" given Plaintiff's admission that Defendant(s) have an equal share in the property. In short, Plaintiff has not alleged sufficient facts to demonstrate the plausibility of his claim of racial discrimination, let alone the likelihood that he will succeed on the merits. Accordingly, Plaintiff is not entitled to a TRO as to this claim.

Nor is Plaintiff entitled to a TRO on his claim for breach of the covenant of quiet enjoyment. Given Plaintiff's allegation that Plaintiff and Defendant Wayne Gaither are *co-tenants* of the property (Am. Compl. ¶¶ 8, 11), there is no covenant of quiet enjoyment, which only pertains to lease agreements executed between a landlord and tenant, and thus Plaintiff has not established a likelihood of success on this claim. See <u>K&S Enters. v. Kennedy Office Supply Co., Inc.</u>, 520 S.E.2d 122, 126 (N.C. Ct. App. 1999); <u>McNamara v. Wilimington Mall Realty Corp.</u>, 466 S.E.2d 324, 328 (N.C. Ct. App. 1996). To the extent that *pro se* Plaintiff seeks to enjoin an ouster or some other deprivation of his rights as a co-tenant of the property, Plaintiff has not made the requisite showing necessary for a TRO to issue as to this claim. Specifically, Plaintiff has not demonstrated that he will suffer irreparable harm in the absence of preliminary relief as a number of remedies are available for Plaintiff to recover the value of the property. Nor has Plaintiff made any showing whatsoever that the balance of equities tip in his favor or that an injunction is in the public interest. To the extent that a landlord-tenant relationship actually exists between Plaintiff and Defendants that may entitle Plaintiff to relief under a breach of the covenant of quiet enjoyment, Plaintiff has still failed to make the requisite showing required for a TRO.

Thus, Plaintiff's Motion for TRO is DENIED.

### III. CONCLUSION

IT IS THEREFORE ORDERED:

1)     Plaintiff's claims against Defendants for failure to pay and report sales and income tax and for fraud against the state Employment Security Commission are DISMISSED for lack of subject matter jurisdiction and lack of standing.

2)     Plaintiff's Motion for Protective Order (Doc. No. 6) is superseded by Plaintiff's Motion for TRO (Doc. No. 7) and is DENIED as moot.

3)     Plaintiff's Motion for TRO (Doc. No. 7) is DENIED.

IT IS SO ORDERED.

Signed: May 13, 2011

Frank D. Whitney
United States District Judge